# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEREK MITCHELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 09-cv-3315 |
| CITY OF CHICAGO, | ) ) Judge Robert M. Dow, Jr. |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's motion to dismiss parts of Plaintiff's amended complaint [46]. Plaintiff's lawsuit invokes Title VII of the Civil Rights Act of 1964 ("Title VII"), as well as 42 U.S.C. §§ 1981 and 1983. The Court has subject-matter jurisdiction over this federal-question case pursuant to 28 U.S.C. §§ 1331 and 1343.

For the reasons set forth below, Defendant's motion is respectfully denied. In addition, the Court denies as moot Defendant's additional request to stay discovery while the motion to dismiss is resolved. See Def. Mot. at 5, 12.

### I.    Background

Plaintiff filed his lawsuit *pro se* in June 2009. Subsequently, Plaintiff retained counsel [14] and the Court granted leave for Plaintiff to amend his complaint [43]. Plaintiff amended his complaint [44], which Defendant now moves to dismiss. In a nutshell, Plaintiff's allegations are that (1) he was harassed, suspended, and denied a merit-based raise on account of his race and (2) Defendant retaliated against Plaintiff for filing discrimination charges with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff, an African-American, began working for Defendant in 2003 in the City of Chicago's Department of Revenue, Tax Division. He started out as an "Auditor I" and was promoted in 2005 to the position of "Auditor II." He remains employed in that position. Compl. ¶ 4.

The trouble, according to Plaintiff, began in February 2006. That is when Defendant's managers began subjecting Plaintiff to "systematic and continuous harassment and racial discrimination." Compl. ¶ 5. The discrimination included "managers constantly watching over [Plaintiff] sign in and out for breaks," as well as placing the break-time sign-in and sign-out sheets on the manager's desk, something that was not done for other similarly situated non-black employees. The sign in sheet was placed on the manager's desk prior to the time when Plaintiff was to take his scheduled breaks as part of an effort to facilitate "intimidating" and "snide" remarks to Plaintiff. On August 16, 2007, for example, Plaintiff went to sign out and management stated, "I expect you to be back on time." *Id.* According to Plaintiff, that kind of remark created a hostile work environment and the statements were not made to similarly situated non-black employees. *Id.*

Plaintiff's workplace grievances continued the next day when he was sent home, allegedly for violating Defendant's dress code, by wearing a shirt that had print on it, "even though Plaintiff had a blazer in the office that covered the writing on the shirt." Compl. ¶ 6. Plaintiff alleges that the treatment created "a hostile and offensive work environment" and that no other similarly situated non-black employees were treated the same way. *Id.*

Four days later, Plaintiff presented management with a request for time off. But on the afternoon that Plaintiff submitted his leave request, he was summoned to the management office and told that on August 29, 2007 (the day he hoped to have off), he would be subjected to a

disciplinary hearing. When Plaintiff informed Defendant that he already had requested that day off, he was told—with a "smirk"—that his time off request had been denied. Compl. ¶ 7. No other similarly situated non-black employees were treated like Plaintiff. *Id.* And on September 10, 2007, Plaintiff was suspended for violating Defendant's dress code policy (apparently the culmination of the printed-shirt incident) and for "failure to return to work." *Id*. ¶ 8. According to Plaintiff, no other similarly situated non-black employees have been suspended for violating the dress code policy. Both of these latter incidents are part of Plaintiff's harassment and hostile work environment claims.

September 2007 found Plaintiff filing an EEOC charge and, he says, subject to retaliation for filing that charge. Plaintiff's complaint alleges that he was suspended in retaliation for filing the EEOC charge, although the announced reason was insubordination and for having made intimidating statements the previous August. Plaintiff also says that he was denied merit pay increases even though he was meeting his employer's legitimate business expectations. Compl. ¶¶ 10-12, 17. At the end of September, Plaintiff filed another EEOC charge for continued discrimination and for retaliation. *Id.* ¶ 14. But that just spurred more retaliation, including a pretextual suspension for "alleged poor work performance and not performing * * * job duties" up to standards that were set solely for Plaintiff. *Id.* ¶¶ 15-16.

According to Plaintiff, he filed another EEOC charge, received a right to sue letter, and then filed his lawsuit in June 2009. Compl. ¶¶ 22-26. Subsequently, Plaintiff received a "poor" evaluation score on his six-month review, which prevented him from receiving a merit-based salary increase. *Id.* ¶¶ 27, 30. The complaint indicates that the supervisor was acting "according to the City's persistent and widespread custom and well settled practice of discriminating against

black employees by disciplining and treating black employees differently than non-black employees." *Id.* ¶ 32.

Plaintiff's two count complaint seeks damages for lost wages, "monetary loss," emotional distress, mental anguish, and harm to his reputation. In Count I, Plaintiff appears to allege that at least some of the aforementioned acts constituted discrete acts of discrimination; Plaintiff also alleges that Defendant's conduct created a hostile work environment. In addition, Plaintiff alleges that the treatment that he suffered was part of a larger practice of discrimination against black employees—they have been subjected to unmerited write-ups, singled out for selective enforcement of the dress code policy, denial of pay increases, denial of time-off requests, and suspensions. See Compl. ¶¶ 34-39. Count I invokes Title VII of the Civil Rights Act of 1964 (codified at 42 U.S.C. § 2000e *et seq*.), as well as 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983"). In Count II, Plaintiff alleges that he was retaliated against for filing his EEOC charges as well as for using internal grievance procedures, and he hangs his claim for relief on the same three statutory hooks as Count I.

## II.  Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief

4

above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

Defendant contends that multiple shortcomings in Plaintiff's complaint warrant a bit of pruning of the claims at the outset of the case. Defendant makes several arguments: (1) Plaintiff fails to state a claim for municipal liability under *Monell* for his Section 1981 and 1983 claims, (2) some Section 1983 and Title VII claims are time-barred, (3) Plaintiff's allegation regarding a request for time off is outside the scope of his administrative charge (and thus the claim was not properly exhausted before filing federal suit), and (4) Plaintiff's allegation related to the filing of an internal complaint should be dismissed for failure to state a claim upon which relief can be granted. The Court takes up each argument in turn.

### A. Plaintiff has Alleged a *Monell* Theory

Section 1983 provides that "[e]very person who, under color [of state law or custom], subjects or causes" the deprivation of rights "secured by the Constitution and laws[] shall be liable to the party injured * * *." In *Monell v. New York City Dept. of Soc. Servs.*, the Supreme Court concluded as a matter of statutory interpretation that municipalities qualify as "person[s]" for Section 1983 purposes. 436 U.S. 658, 690 (1978) (abrogating the rule in *Monroe v. Pape*, 365 U.S. 167 (1961)).

Municipalities are Section 1983 persons, but it is harder to impose liability on them than on individuals. That is because the plain language of Section 1983 contains a causation component: the act imposes liability only on a person who "subjects or causes" a constitutional injury. In *Monell*, the Supreme Court held that a municipality's mere status as an employer of a constitutional tortfeasor is not enough to satisfy the statute's causation requirement. 436 U.S. at 691 ("in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). In order to establish municipal liability, a Plaintiff ultimately "must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself." *Bethesda Lutheran Homes and Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); see also *Valentino v. Vill. of South Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (municipal liability where a course of action is set by those who make municipal policy); *Thomas v. Cook County Sheriff's Dept.*, 588 F.3d 445, 456-57 (7th Cir. 2009) (causation); *New West, L.P. v. City of Joliet*, 491 F.3d 717, 720 (7th Cir. 2007) (same); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (same). The requisite causation may be established by a custom or policy. As Justice Frankfurter explained in *Nashville, C. & St. L. Ry. v. Browning*, "Settled state practice * * * can establish what is state law. * * * Deeply embedded traditional ways of carrying out state policy * * * are often tougher and truer law than the dead words of the written text." 310 U.S. 362, 369 (1940).

One additional gloss completes the statutory backdrop that is required to understand the parties' arguments: Section 1983, by itself, does not create substantive rights. Rather, Section 1983 serves as a vehicle for vindicating rights that are furnished elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). One such elsewhere is Section 1981, which says that people who are not white have the same right to "make and enforce contracts" as white people. 42

U.S.C. § 1981(a). When a plaintiff invokes Section 1981 in pursuit of state actors, his claims must use the Section 1983 vehicle, which means that the standards in *Monell* and its progeny apply to Section 1981 municipal liability. *Jett v. Dallas Independent Sch. Dist.*, 491 US. 701, 731-34 (1989) (holding as a matter of statutory interpretation that Section 1983 is the exclusive remedy in damages suits against state employees for Section 1981 violations and that *Monell* applies); *Smith v. Chicago Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1148 (7th Cir. 1999).

Against that statutory backdrop, the Court turns to Defendant's arguments regarding the insufficiency of Plaintiff's complaint. Defendant contends in its motion to dismiss that Plaintiff's allegations are insufficient because Plaintiff makes a barebones and conclusory allegation that an "amorphous 'city management' follows a 'well-settled practice' of '[discriminating against] and treating black employees differently.'" Def. Mot. at 6; see also Compl. ¶ 32.[1] For that reason, Defendant maintains that the complaint is not sufficient to impose liability under Section 1983 or Section 1981. As explained above, however, there is no separate standard for municipal liability "under"—and, in the case of Section 1983, "pursuant to"—these statutes.

More importantly, Defendant's quotation from Plaintiff's complaint is selective. Were it true that Plaintiff made only the vague allegation in paragraph 32 of the complaint that Defendant highlights, the Court would grant Defendant's motion: an allegation that a defendant discriminated against a plaintiff because the former treated the latter differently amounts to a general, thirty-thousand-foot definition of the word "discrimination." As the Supreme Court re-emphasized in *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009), a plaintiff need not offer

---

[1] Defendant also identifies a second flaw based on its assumption that Plaintiff is pursuing a failure to train theory of liability. However, Plaintiff does not appear to seek to impose liability based on such a theory. Therefore, the Court need not take up the matter at this time.

"detailed factual allegations," but must do more than offer "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949. Thus, a "naked assertion devoid of further factual enhancement" does not satisfy the notice requirement of Federal Rule of Civil Procedure 8(a)(2). *Id.* (quotation marks and alteration omitted). Defendant correctly asserts that the quotation it highlights from paragraph 32 of the complaint would not pass *Iqbal* muster, because alleging discrimination in violation of Section 1981 is a barebones legal conclusion.

Yet, Plaintiff has alleged more than the quotation that Defendant has highlighted. Specifically, Plaintiff alleges conduct that adds flesh to the bones of paragraph 32. Among other things, Plaintiff says that he was denied merit-based pay increases that he was entitled to (Compl. ¶ 16), that rules were applied to him selectively (*e.g.*, Compl. ¶ 6), that he was suspended (Compl. ¶ 15), and that he was subject to those actions because of his race. What is more, Plaintiff alleges that he was not the only one to experience the sort of discrimination that he has highlighted in his complaint. Rather, "[a]t all times relevant * * * it was a persistent, widespread and well settled practice of the Defendant to discriminate against black employees * * * with respect to violations of the dress code policy, suspensions, denial of merit pay increases and denial of time off requests." Compl. ¶ 39 (emphasis added). Defendant does not suggest that Plaintiff could not recover based on the discrimination that Plaintiff has alleged. See also *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009) (categorizing recoverable adverse employment actions, including those that change a work environment to make it "humiliating * * * or otherwise significantly negative"); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790-91 (7th Cir. 2007) (although poor reviews are not materially adverse employment actions, denial of pay raises are); *Walker v. Abbot Labs.*, 340 F.3d 471, 474 (7th Cir. 2003) (stating that the same liability standards apply to Section 1981 and Title VII actions,

although highlighting important differences in the statutory scheme, including different limitations periods[2]). Although some of Plaintiff's specific allegations ultimately may prove insufficient as a matter of law because "not everything that makes an employee unhappy is an actionable adverse action" (*Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)), the Court sees no reason (on these facts, at least) to redact individual paragraphs of Plaintiff's complaint when the underlying count is sufficient. But see Fed. R. Civ. P. 12(f) (district court judges have the authority, on their own motion, to strike immaterial matter).

Plaintiff has sufficiently alleged discriminatory practices relating to African-American employees such that Defendant is on notice of the nature of the claims against it. Taking the allegations as true, as the Court must at this phase of the litigation (*e.g.*, *Barnes*, 420 F.3d at 677), the allegations raise the possibility of relief above the speculative level.

### B. Timeliness of Plaintiff's Claims

As a general matter, affirmative defenses should not be addressed at the motion to dismiss phase. Rather, they are appropriately brought no earlier than a Rule 12(c) motion for judgment on the pleadings. See, *e.g.*, *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007); Fed. R. Civ. P. 12(b) (listing seven defenses that may and must be brought before a responsive pleading is filed, which list does not include the defenses advanced by Defendant). The exception to that rule applies where a Plaintiff has pled himself out of court by establishing the defense in his own complaint. See, *e.g.*, *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

Defendant's motion to dismiss indicates that Plaintiff has pled himself out of court by seeking to recover for alleged acts of discrimination that took place prior to June 2, 2007,

---

[2] The specific limitations period in *Walker* was listed as two years for Section 1981 actions. As discussed below, the Supreme Court subsequently clarified that a four-year limitations period applies to Section 1981 actions.

contending that any such incidents would fall outside of the two-year limitations window that applies to Illinois-based Section 1983 cases. Def. Mot. at 7. Defendant is correct that, as a general matter, "[t]he statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts." *City of Ranch Palos Verdes, California v. Abrams*, 544 U.S. 113, 123 n.5 (2005). As a threshold matter, however, Defendant's argument could not result in a complete dismissal of the claims to which Defendant alludes: Plaintiff has alleged a hostile work environment (*e.g.*, Compl. ¶ 37), which means that, subject to certain equitable defenses like *laches*, Plaintiff can connect otherwise-time-barred discrete acts of discrimination to timely acts of discrimination as part of a (distinct, separate) claim for a hostile work environment. See, *e.g.*, *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927-28 (7th Cir. 2006) (Easterbrook, J.) (discussing the Supreme Court's holding in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-15 (2002), and observing that the Court treats a hostile work environment claim "as one employment practice, potentially reaching far into the past").

More important still, Plaintiff need not rely on cases like *Morgan* to breathe life into otherwise untimely discrete acts of discrimination, because Section 1983 does not furnish the applicable limitations period. Again, it is Section 1981, not Section 1983, that provides the employment-based protections that Plaintiff invokes.

Critically, Section 1981 was amended in 1991. And 28 U.S.C. § 1658, provides that the statute of limitations is four years for causes of action "arising under an Act of Congress enacted after" December 1, 1990. In *Jones v. R.R. Donnelley & Sons Co.*, the Supreme Court held that a cause of action "arises under" an act when the act makes the lawsuit possible. 541 U.S. 369, 381 (2004). The *Jones* case dealt specifically with Section 1981. Prior to *Jones*, the Supreme Court had held that Section 1981 claims could not be brought for post-contract-formation conduct. *Id.*

at 372-73. In 1991, Congress amended the statute to overrule that holding, broadening the definition of the term "make and enforce contracts" to include "the termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* at 373; 42 U.S.C. § 1981(b); 4 Lex K. Larson, LABOR AND EMPLOYMENT LAW § 105.03[1], at 105-4 (Matthew Bender) ("it is now definite that § 1981's prohibition extends to the same broad range of employment actions and conditions as Title VII").

Because the 1991 amendment expanded the scope of recoverable claims, the Court held that the longer, four-year limitations period of 28 U.S.C. § 1658 applied to the expanded protections of Section 1981: "An amendment to an existing statute is no less an 'Act of Congress' than a new, stand-alone statute. What matters is the substantive effect of an enactment—the creation of new rights of action and corresponding liabilities * * *." *Jones*, 541 U.S. at 381. And although *Jones* dealt with a Section 1981 case that was brought directly under Section 1981—recall that Section 1983 applies only to state actors, and the Supreme Court has held that there is an implied *direct* right of action under Section 1981 against private actors—the four-year limitations period applies where a plaintiff raises a Section 1981 claim, pursuant to Section 1983, against state actors. See *Pruitt v. City of Chicago, Dept. of Aviation*, 2004 WL 1146110, at *7 (N.D. Ill. May 20, 2004) (clearly ruling in the context of the case against the City of Chicago that the four year limitations period applied), aff'd, 472 F.3d at 927 (Easterbrook, J.) (stating that a four-year limitations period applies to Section 1981 claims). In this case, that means that Plaintiff gets the benefit of a longer limitations period, and none of Plaintiff's claims fall outside of the four-year period.

As to Defendant's arguments that some of Plaintiff's Title VII claims, too, may be time barred, there is no need to take up the issue at this time, given the early stage of the litigation.

Defendant asks the Court to strike not counts, but specific allegations within Plaintiff's complaint. In addition to the dubious utility of such a practice, Defendant's argument runs up against the rule in *Morgan*, which teaches that hostile work environment claims may be brought where there is a single discrete act of discrimination within the pertinent 300-day window, and which also teaches that non-actionable incidents may serve as background evidence in any event. See 536 U.S. at 113, 115. By striking individual allegations, the Court would be throwing out legally viable babies with the time-barred bath water. See also *Aaron v. Mahl*, 550 F.3d 659, 666 (7th Cir. 2008) ("Under the notice pleading standard * * * a complaint need not contain legal theories."). As the case unfolds, of course, Defendant may use discovery and appropriately brought motions to force a finer point upon Plaintiff's legal theories.

### C. Scope of the Charge

Defendant argues next that Plaintiff has exceeded the scope of his EEOC charge with the complaint's allegation that he was denied a request for time off.

The scope of a judicial proceeding subsequent to an EEOC charge "is limited by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The limitation, like the statutory limitations period, is not jurisdictional, but is a condition precedent to recovery. See *id.* & n.20. "To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge," a court must decide whether "the allegations are like or reasonably related to those contained in the [EEOC] charge." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The rule is designed at once to give notice to the employer of the nature of the claims against it and to provide an opportunity for the EEOC and the employer to settle the dispute. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Nonetheless, the standard is a liberal one. *Miller v. Am. Airlines, Inc.*, 525

F.3d 520, 525-26 (7th Cir. 2008). Claims are reasonably related—and hence properly raised in a subsequent lawsuit—"if there is a factual relationship between them." *Kersting*, 250 F.3d at 118. The factual information provided in the charge is "[m]ore significant" than "technical defect[s]." *Cable v. Ivy Tech State College*, 200 F.3d 467, 477 (7th Cir. 1999); *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 528 (7th Cir. 2003) ("we do not rest our decision here on an omitted checkmark"). In short, the pertinent inquiry is "what EEOC investigation could reasonably be expected to grow from the original complaint." *Ajayi*, 336 F.3d at 527.

Under the governing standards, the case *would* be a close one if Plaintiff were seeking to recover for the denial-of-time-off incident as a standalone discrete act of discrimination. Militating in favor of Plaintiff, even as a standalone claim, is that his charge does specifically mention the August 29, 2007 suspension. It might be that an EEOC investigation of the procedures by which the date for the disciplinary hearing was chosen "could reasonably be expected to grow" from that charge. *Ajayi*, 336 F.3d at 527. The Court need not decide the matter, however, because Plaintiff has indicated that the denial of time off is being pursued as part of his hostile work environment claim. See Pl. Resp. at 6. Part of that claim, as stated in the EEOC charge, is that the harassment that Plaintiff suffered included "being constantly called into the office and falsely accuses [sic] me of violating [Defendant's] work policies." Compl., Ex. A. A reasonable investigation of Plaintiff's complaint would have included inquiry into what was said when Plaintiff was hauled into management's offices—*i.e.*, it would have explored the contours of the harassment that Plaintiff was alleging. That conclusion seems particularly true here because the "harassment" that Plaintiff cites in the EEOC charge includes just a fifteen-day window, which covered the allegations that Defendant targets in its motion. A Title VII plaintiff "need not allege in an EEOC charge each and every fact that combines to form the basis of each

claim in her complaint." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In addition, Plaintiff does highlight the August 29 suspension[3] in his charge, singling out that date from the already-narrow fifteen-day window, which bolsters the notion that an investigation into the circumstances surrounding his suspension likely would have been explored by the EEOC as part of a hostile work environment claim. *Cf. Rush*, 966 F.2d at 1111 (claims that are "derivative" of a claim that is mentioned in the charge are within the scope of the charge). Among the purposes of an EEOC charge is to give the defendant "some warning of the conduct about which the employee is aggrieved." *Cheek*, 31 F.3d at 500. The Court concludes that Plaintiff's complaint was sufficient to provide such a warning.

### D. The Retaliation Allegation

Finally, Defendant's motion to dismiss seeks to dispense with a specific allegation in Plaintiff's complaint. Plaintiff's complaint states that "On July 29, 2009, Plaintiff's immediate supervisor performed Plaintiff's six month evaluation and gave Plaintiff a poor evaluation score so as to prohibit Plaintiff from receiving his merit pay increase, in retaliation for Plaintiff filing previous charges of discrimination with the EEOC, for filing a lawsuit against Defendant's *and for making an internal complaint against him for violating the City's personnel policy*." Compl. ¶ 27 (emphasis added). That last clause led to the instant motion; Defendant maintains that the Court should "dismiss" the allegation because Plaintiff failed to allege that the City retaliated against him for engaging in a statutorily protected activity. Def. Mot. at 11. Plaintiff's response is not entirely clear, and it does not cite any legal authority.

Defendant relies on *Tomanovich v. City of Indianapolis*, 457 F.3d 656 (7th Cir. 2006). In that case, the court of appeals held that in order to prove a retaliation case under the direct

---

[3] The complaint states that the suspension did not actually occur until September 10 (Compl. ¶ 8), but the difference would not matter for purposes of the present inquiry because the key question relates to the nature of the information that was brought to the EEOC's and Defendant's attention.

method of proof, a plaintiff must prove (1) that he engaged in a statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that a causal connection exists between the two. *Id.* at 663. The court of appeals stated that filing an internal workplace complaint may satisfy the first prong (statutorily protected activity), but that the internal complaint must relate to discrimination related to a protected class (*e.g.*, race). *Id.*; see also Larson, *supra*, § 105.09[5] at 105-21 (because of Section 1981's applicability only to race discrimination, "if the alleged wrongdoing [in retaliation for complaining to the employer] has nothing to do with race discrimination, any retaliation claim under § 1981 would be non suitable").

Count II cannot be dismissed at this time. First, Defendant has not cited authority that stands for the proposition that a plaintiff must allege *in his complaint* that the workplace grievance related to a protected class. "[A]ny defendant[] tempted to write 'this complaint is deficient because it does not contain …' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007). Having failed to present authority establishing that a plaintiff's complaint must specifically allege that the internal grievance related to a protected class, Defendant is not entitled to a ruling that Plaintiff cannot prevail on the claim as a matter of law. In addition, given that Plaintiff alleges discrimination based on race throughout his complaint, it is a reasonable inference that his workplace complaint related to the same subject—at the motion to dismiss phase, Plaintiff receives the benefit of such reasonable hypotheticals.[4] *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000). Second, and independently, the Court observes that Plaintiff alleges that he was retaliated against for filing EEOC charges of

---

[4] If, as Defendant contends in its brief, the workplace complaint related merely to non-protected-class matters, that portion of the Title VII retaliation case may be dead in the water, but that still leaves intact the allegations related to retaliation for filing an EEOC charge, which stands on sounder (and un-attacked) legal footing.

15

discrimination.  Put simply, Plaintiff's allegation that he was retaliated against for filing an EEOC charge presents a bread and butter Title VII retaliation case.  See 42 U.S.C. § 2000e-3 (affording statutory protection to the filing of an EEOC charge).

The purpose of the complaint is to put the Defendant on notice of the nature of the claims against it; the Court concludes that Plaintiff has done so in this case.

**IV.  Conclusion**

For the reasons set forth above, Defendant's motion to dismiss [46] is respectfully denied.

Dated:  May 13, 2010

_____
Robert M. Dow, Jr.
United States District Judge

16